# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF NEW MEXICO

In re:

THE VAUGHAN COMPANY, REALTORS,   Case No. 10-10759-s11

    Debtor.   Chapter 11

---

JUDITH A. WAGNER, Chapter
11 TRUSTEE of the bankruptcy estate
Of the Vaughan Company, Realtors,
    Plaintiff,

v.   Adv. Proc. 12-01008-s11

F.R. (FRANK) HECKL, and VICKI HECKL
a/k/a VICKI PERRIGO,
    Defendants.

---

## DEFENDANT'S MOTION TO DISMISS AND MEMORANDUM IN SUPPORT

    **COME NOW,** Defendants, F.R. (Frank) Heckl and Vicki Heckl (hereinafter collectively referred to as "Heckl" or "Defendants"), by and through their attorneys of record, ALBUQUERQUE BUSINESS LAW, P.C. (Patrick J. Griebel and James Burns), and DON HARRIS ATTORNEY AT LAW, P.C., hereby respectfully move this Court, pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), to dismiss the Complaint in the above-captioned adversary action. The Defendant also hereby provides notice of the Defendants' intent to file a motion to withdraw under 28 U.S.C. §157(d). The accompanying Memorandum of Law fully sets forth the support for Defendant's Motion to Dismiss:

# INTRODUCTION

There are no winners in a Ponzi scheme and all investors are victims. Investor-victims are those individuals, who, unbeknownst to them at the time, invested monies into what was apparently a Ponzi scheme operated by Douglas Vaughan ("Vaughan") and The Vaughan Company, Realtors ("VCR"). Other than in the case of insiders, luck and happenstance dictated which investor-victims placed funds into the scheme and which investor-victims received the return of any funds. While every investor in a Ponzi scheme suffers financially once the fraud is exposed, those investor-victims who also later become subject to avoidance and fraudulent transfer actions ("clawbacks") are effectively victimized twice.

This effect is in stark contrast to the equitable purposes for which the clawback powers were created and bestowed upon the bankruptcy court in order to promote fair outcomes. The imposition of strict liability on transferees of fraudulent conveyances is inherently inequitable, and such inequity is amplified when such tools are used to unfairly punish certain investor-victims for the benefit of other investor-victims. Requiring "net gainers" to pay all positive returns on investment back to "net losers" not only spurs social evils such as necessarily favoring later investors, creating and fueling the strife among Ponzi scheme investor-victims, it also contradicts the common-law principle of freedom to contract and the Constitutional right to not have property taken from them without just compensation.

Moreover, aggressive Trustee clawback actions serve only to further perpetuate and expand the victimization. Here, because of the double victimization of a certain class of investor-victims, the Trustee's numerous clawback actions do not actually promote equity; even though equity and fairness were the intended purpose and design for such clawback powers. The clawback powers are incredibly powerful tools which authorize the "taking of property" and should therefore be exercised only with the greatest degree of care and under appropriate supervision. *See In re Teleservices*

*Group, Inc.*, 2011 WL 3610050 (Bankr. W.D. Mich. 2011) at p. 17. The misuse of clawback powers is precisely the type of risk which was contemplated by, and should be cured by, looking to Article III of the Constitution. Article III of the Constitution clearly limits the scope of authority of the bankruptcy courts, and all other subordinate courts, in order to preserve the hierarchical structure of the United States judicial system. As a result of the foregoing, this Court lacks sufficient Constitutional authority to decide and enter judgment on the causes of action in the Complaint which arise from state law; therefore, all causes of action claimed in the Trustee's Complaint which implicate state law and do not arise from the bankruptcy code should be dismissed from this Court.

## BACKGROUND

Here, the Bankruptcy Trustee in the Vaughan Company, Realtors (hereinafter, "VCR" or "VCR Case") chapter 11 bankruptcy case has initiated numerous claw-back actions relating to investments operated by, and through, Douglas Vaughan, the Vaughan Company, Realtors, and other Vaughan-controlled entities. The claw-back actions are aimed at obtaining payments made by Douglas Vaughan and VCR as part of an alleged Ponzi scheme. The Trustee has initiated the instant clawback action (Adversary No. 12-1008) against Defendants, ostensibly, to avoid and recover payments made to Defendants after February 22, 2006. The Trustee's Complaint seeks $123,008.12, the alleged total of payments made to Defendants after February 22, 2006 ("Four Year Transfers"); including a claim for $33,547.64, the alleged total of payments made to Heckl since February 22, 2008 ("Two Year Transfers").

Defendants invested funds with Douglas Vaughan and VCR using at least two different "vehicles" for investment. The first vehicle was a real estate investment placed with Douglas Vaughan and VCR, which the Trustee has alleged was a Ponzi scheme. Defendants also invested other funds with Douglas Vaughn and VCR through an LLC investment vehicle, specifically, in Vaughan Equities III, LLC (hereinafter referred to as "VE III"), a formerly-registered New Mexico limited liability company. Douglas Vaughan and agents of VCR represented to Heckl that the investment in VE III would be used for the purchase of certain real property in Bernalillo and that

VE III would hold title to, and control, the real property after the purchase. Ultimately, the real property was purportedly purchased by Douglas Vaughan and/or VCR but title to the property was never transferred to VE III. Although it is not clear which investment vehicle was the basis for the payments made to Defendants from Vaughan and VCR; like all investors who placed funds with Vaughan, VCR, or the numerous other entities controlled by Vaughan, the Defendants' suffered economic loss and emotional harm as a result of their investments with Vaughan and VCR. The Defendants are now subject to a second round of victimization from the Trustee's clawback Complaint.

## STANDARD OF REVIEW

Defendants respectfully move to dismiss the Trustee's Complaint pursuant to Fed.R.Civ.P. 12(b)(1), applicable under Fed.R.Bankr.P. Rule 7012(b), for lack of subject-matter jurisdiction. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006) ("The objection that a federal court lacks subject-matter jurisdiction ... may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment.") In accordance with Rule 7012(b), Defendants affirmatively state that the Trustee's Complaint is not, in its entirety, a core proceeding, and to the extent that any claims are deemed core proceedings, Defendants do not consent to entry of final orders or judgment by this Bankruptcy Court. *See* 28 U.S.C. §157(c); Fed.R.Bankr.P. Rule 7008. When considering a motion to dismiss for lack of subject matter jurisdiction, the plaintiff, as the party seeking to invoke the court's jurisdiction, always bears the burden of establishing subject matter jurisdiction. *Kingman Reef Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1197 (9th Cir.2008). The court presumes a lack of subject matter jurisdiction until the plaintiff proves otherwise. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994).

Alternatively, Defendants respectfully move to dismiss the Trustee's Complaint pursuant to Fed.R.Civ.P. Rule 12(b)(6), made applicable to adversary proceedings by Fed.R.Bankr.P. Rule 7012.

In considering a motion to dismiss under Rule 12(b)(6), the Court accepts as true all well pleaded facts and evaluates those facts in the light most favorable to the plaintiff. *Moore v. Guthrie,* 438 F.3d 1036, 1039 (10th Cir. 2006). The standard of proof established in *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Under *Twombly,* in order to survive a motion to dismiss under Rule 12(b)(6) the complaint must contain enough facts to state a cause of action that is "plausible on its face." 550 U.S. at 570. In other words, the plaintiff must "nudge [his] claims across the line from conceivable to plausible." *Id.* In applying this new standard, the Tenth Circuit has directed the trial court to "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Alvarado v. KOB-TV, L.L.C.,* 493 F.3d 1210, 1215, n.2 (10th Cir. 2007)(citation omitted). The plaintiff must sufficiently allege all facts necessary to support the required elements under the legal theory proposed. *Lane v. Simon,* 495 F.3d 1182, 1186 (10th Cir. 2007)(citation omitted).

## ARGUMENT

The Trustee in the above-captioned matter filed this Adversary Proceeding against Defendants in an attempt to avoid and recover allegedly fraudulent transfers and allegedly preferential transfers made by the debtor, VCR, under Title 11 of the U.S. Code and relevant New Mexico law. The bankruptcy court is generally authorized to, and is imparted with a duty to, maximize the value of the bankruptcy estate of the debtor in order to benefit the creditors of the estate. In *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982), Justice Brennan's plurality opinion referred to the bankruptcy court's authority to "restructur[e]…. debtor-creditor relations…the core of the federal bankruptcy power." 458 U.S. at 71.

The United States Supreme Court recently narrowed the scope of the authority of bankruptcy courts, with direct implications to the instant case. The case, *Stern v. Marshall*, held that bankruptcy courts lack the constitutional authority as Article I courts to enter final judgments on

state law claims even if they are core proceedings. 131 S. Ct. 2594 (2011). While bankruptcy courts are generally have authority over all core proceedings, *Stern v. Marshall* makes it clear that the core/non-core classification provided for in 11 U.S.C. § 157 does not, by itself, determine a bankruptcy court's authority to finally decide a matter in a bankruptcy case. Rather, the court first must inquire whether the matter at issue: (i) is within the narrow range of "public rights" that Congress can assign to an Article I court for final determination; (ii) is a non-bankruptcy law claim the determination of which is so intertwined with consideration of the creditor's proof of claim that a separate plenary suit would be meaningless; or (iii) is a private law claim that is independent of the claims adjudication process. Other than where the claim at issue relates to a "public right" or an impossibly intertwined private right, a bankruptcy court cannot "exercis[e] the essential attributes of judicial power that are reserved to Article III Courts." 131 S. Ct. at 2619.

It is clear that fraudulent conveyance claims in bankruptcy do not fall within the public rights exception. Although codified by the Bankruptcy Reform Act of 1978, fraudulent conveyance claims "more nearly resemble state law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res." *Granfinanciera, S. A. v. Nordberg*, 492 U.S. 33, 56 (1989). Numerous courts have held that fraudulent conveyance actions are essentially private causes of action, for example, the majority in *Stern* relied heavily upon *Granfinanciera, S.A. v. Nordbert*, 492 U.S. 33 (1989), which held that an action by a bankruptcy estate to recover money allegedly fraudulently transferred by the debtor was a "suit at common law" entitled to the right of trial by jury as provided by the Seventh Amendment. In accordance with *Stern*, fraudulent conveyance actions

The Trustee's Complaint relates to, and is dependent upon, non-bankruptcy laws and the claims cannot therefore be considered to fall within the narrow classification of intertwined non-bankruptcy claims. In the seminal case of *N. Pipeline Constr. Co. v. Marathon Pipeline Co.*, the Supreme

Court held that the adversarial actions based on state law could not be finally adjudicated by the bankruptcy court. 458 U.S. 50, 102 S. Ct. 2858, 73 L. Ed. 2d 598 (1982). The Court explained that while the restructuring of debtor-creditor relationships is at the core of the federal bankruptcy power, the adjudication of state-created private rights is not. *Id.* at 71. Similarly, this Court may not constitutionally hear the Trustee's fraudulent conveyance claims as a core proceeding since the Trustee's causes of action necessarily relate to, and depend upon, state law.

To the extent that this Court would exercise jurisdiction over the Trustee's claims in a non-core proceeding; at least one court has noted that "the safe interpretation as to the limitations upon this court due to the effect of the *Stern* case is that this Court may only submit proposed findings of facts and conclusions of law regarding the state law claims against Defendant. Any final judgment will be entered by an Article III judge, absent consent of all parties." *Medical Educ. & Health Servs. v. Indep. Municipality of Mayaguez (In re Medical Educ. & Health Servs.)*, 459 B.R. 527, 549 (Bankr. D.P.R. 2011). A recent bankruptcy court decision has succinctly evaluated the practical implications of limiting the bankruptcy court to only proposed findings in the event of a non-core adversarial proceeding:

> [O]ne or more of the parties could seek withdrawal of the reference pursuant to 28 U.S.C. § 157(d) and Rule 5011(a) and have the matter heard entirely before a United States District Judge. Under these circumstances, abstention is the proper course. If the matter were tried by the undersigned judge, there could be no final decision until after *de novo* review by a United States District Judge. Any benefit from the undersigned judge's familiarity with the issues in this matter would be offset by the need for an Article III judge to review the matter before entering final judgment. Similarly, if the matter were heard entirely before an Article III judge, that judge would have none of the undersigned judge's familiarity with the issues from having presided over the bankruptcy case and this Adversary Proceeding. Therefore, pursuant to 28 U.S.C. § 1334(c)(1) and Stern, abstention is the proper course.

*Southwest Sports Ctr., Inc. v. Keem (In re Southwest Sports Ctr., Inc.)*, 2011 Bankr. LEXIS 3404, 18-19 (Bankr. N.D. Ohio Sept. 6, 2011).

## CONCLUSION

In accordance with the foregoing, the Defendants request that the Trustee's Complaint be dismissed for lack of subject matter jurisdiction based upon the lack of Constitutional authority to decide the claims which implicate state law. However, because Defendants intend to file a motion for withdrawal under 28 U.S.C. § 157(d), the Defendants would request a temporary stay in the instant adversary proceedings in order to further pursue withdrawal to the District Court.

Respectfully Submitted,

ALBUQUERQUE BUSINESS LAW, P.C.

  /s/ electronically submitted
Patrick J. Griebel
James Burns
*Co-counsel for Defendants*
1803 Rio Grande Blvd NW Suite B
Albuquerque, NM 87104
(505) 246-2878
(888) 235-8229 –facsimile

DON HARRIS ATTORNEY AT LAW, P.C.

  /s/ electronically submitted
Don Harris
*Co-counsel for Defendants*
1120 Pennsylvania NE
Albuquerque, NM 87110
(505) 299-4529
(505) 299-4524 -facsimile

## CERTIFICATE OF SERVICE

I, James Burns, hereby certify that on February 29, 2012, a true and correct copy of the foregoing pleading was filed electronically with the Court in accordance with the CM/ECF system filing procedures for providing electronic service to the parties of record identified with the Court.

  /s/ electronically submitted
James Burns